Again, good morning and may it please the court. I'm Jeffrey Ehrlich for Mr. Miller and I'd like to reserve five minutes of my time for room 12. The principal issue... All right, I'll try to help you out, but keep your eye on the clock as well. It's very clearly displayed. I'll keep an eye on it. The principal issue presented in this appeal is whether Mr. Miller's common law negligence claim against defendant C.H. Robinson, a freight broker, is preempted by the Federal Aviation Administration Authorization Act of 1994, which is a mouthful and I'll probably refer to as the Act or sometimes the FAAA. In our view, the doctrine of stare decisis provides the answer to that question. In Charas v. Trans World Airlines, this court considered whether the Airline Deregulation Act, the ADA, preempted common law negligence claims against airlines. And because the ADA and the FAAA have similar purposes, contain almost identical preemption clauses, even Robinson acknowledges on page 15 of its answering brief that, and I'm quoting, both this court and the Supreme Court find case law interpreting the ADA to be persuasive. So Charas held in a unanimous en banc opinion that the ADA did not preempt common law negligence claims. And this court explained the rationale for that holding in the first paragraph of the opinion this way, saying, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry. Congress did not intend to preempt passengers' run-of-the-mill personal injury claims. So this view applies with equal force to the FAAA, which this court explained in the California Trucking Association case was intended to create regulatory parity between air carriers and motor carriers, and also to prevent states from undermining the federal deregulation of the trucking market, essentially the same outcome for the trucking industry that the ADA had for the airline industry. And given the similarities and the respective statutory purposes and in the almost identical language in the preemption clauses, the principle of stare decisis points to the conclusion that the FAAA, like the ADA, does not on page 25 of its answering brief, that the FAAA does not preempt negligence claims against motor carriers. And that concession narrows... Let me... Mr. Ehrlich, I'm sorry for interrupting, but let me ask you this, because in preparing for this case, it's certainly helpful to look at cases addressing the ADA, and it's also helpful to look at cases like Dilt and Sue in trying to how we should think about this statute. But the difference between the ADA and this particular statute is that this one applies to brokers as well. So let me have you start with kind of the plain language of the statute, because it's preempted if the state law or regulation is related to the service of a broker. So why isn't your claim in this case directly related to the Well, I think that the answer to that question is that the term service of a broker has to be construed in the same sort of public utility way that the court interpreted that term in the ADA in Cheritz, saying that service doesn't mean literally everything that the broker does. Instead, you have to juxtapose and construe that term next to the phrase price and route, so that the expansive definition of service doesn't just sort of make the other two terms superfluous. And so, for example, as the Cheritz court pointed out, one of the cases it overruled involving the ADA was Harris versus American Airlines, where the court held that a negligence claim against an airline for over-serving alcoholic beverages to a passenger that the well, providing alcoholic beverages or beverages to passengers is a service, and therefore it's preempted. And in Cheritz, the court overruled that saying you can't really rely on this sort of literal interpretation, you have to take into account the broader view of what Congress is intending to do with the preemption clause in the statute. So I think your negligence claim here rests on one of the core service by C.H. Robinson. It's not a tangential question here. Your Honor, I think that I know Robinson likes to frame the issue as a core services versus tangential, but going back to their, I think this is really important, their concession that the FAAA does not preempt negligence claims against carriers is very important in getting to this question about what's core and what's peripheral. Because a state law duty of care operates the same way with respect to carriers that it does with respect to brokers. A duty of care tells carriers whose job it is to transport freight with trucks to operate those trucks to use them reasonably. That's what they're required to do by the duty. The duty tells brokers that in partially to select carriers, they have to make that selection reasonably. And if, as Robinson concedes, telling carriers to operate their trucks in a reasonable way doesn't relate to prices, routes, or services, then by parity of reasoning, it doesn't apply to prices, routes, or services with respect to brokers. It's not as if there are two preemption clauses in the FAAA, one for brokers and one for carriers. There's not. There's one preemption clause, and it says that all state laws are preempted if they are related to a price, route, or service of any motor carrier or broker with respect to the transportation of property. And there's no special carve-out for negligence claims against carriers escapes preemption, which Robinson admits, is to say that those negligence claims do not relate to the carrier's prices, routes, or services. And because the preemption standard is identical for carriers and brokers, if negligence claims against carriers don't relate to their prices, routes, or services, they likewise don't relate to the prices, routes, or services brokers. Now, Robinson does suggest two possible reasons that would support treating brokers and carriers differently with respect to the preemption negligence claims. So first, it makes the point what I just addressed, saying that negligence claims against brokers are somehow qualitatively different than negligence claims against carriers because it says that the negligence claims against carriers are only incidental to the transportation services that they render, whereas the negligence claims intrude on the core service of the broker. And again, I think it's the misnomer or the problem with that argument is that it understates the effect of the state law duty on carriers. It's not tangential or incidental to tell carriers that they must operate their trucks and maintain their trucks reasonably using due care. That is no different than telling brokers that you must perform your service with due care. So there really isn't a logical way to frame the impact of the carriers as incidental and yet treating the impact of that same duty on brokers as whatever the opposite of incidental would be. I know your time is running down to the point where you wanted to save it for rebuttal. Do you want to address the alternative argument of the safety exception? I will in a second. I also, though, just want to point out that the purchase of liability coverage, that's the second reason that Robinson wants to distinguish brokers from carriers. And I point out that the scope of the preemption provision can't be measured by the insurance of the preemption clause. And second of all, that the insurance mandate wasn't part of the FAA. It was inserted in the Motor Carrier Act of 1980, 14 years earlier, and it was left unchanged in the FAA. And while that mandate certainly suggests that Congress didn't intend to preempt negligence claims that were required to be insured against, the absence of the mandate doesn't alter the language of the preemption clause. And the logic doesn't work the other way in the sense that by when a legislature creates a mandate on one group to purchase insurance, you can't reason from that that everyone who isn't subject to the mandate is immune from liability. California requires me as a driver to purchase liability coverage, but it doesn't require me as a lawyer to purchase E&O coverage. But that doesn't immunize me from a malpractice claim. The other point, before I get to the safety exception, is that this court's deals in California trucking cases make it very clear that the issue isn't whether there's just some logical connection to say, well, duty of care has some impact on what a broker does and therefore it's preempted. The question is, does it have a significant impact or is that impact remote or tenuous? And California trucking and DILTs make it clear that generally applicable background rules. So in DILTs, it was state meal and rest break rules. Here, it would be a common law duty of care, doesn't trigger preemption, even if employers must factor those provisions into their decisions about the prices they set, the routes they use, or the services they provide. And similarly in California trucking, the court explained that preemption is not triggered, even if the industry has to take a state law into account when arranging operations. With respect to the safety exception, because my time is limited, I'm certainly going to rely on the briefing. I would just say first, of course, you don't have to reach it if you find that the statute doesn't preempt the negligence claims, which is certainly our position. And second of all, the safety exception does preserve the authority of states to regulate in the area of safety if the regulation is genuinely intended to do that. And the police power, Robinson says, well, that can't apply to common law rules. But as we point out that in Nevada, the courts are creatures of the legislature and judicial enforcement of safety rules. Regardless of whether those rules are based on legislative enactments or the common law, it's integral to the functioning of the police power, because laws aren't self-enforcing. You need courts to do that. That's the work of the courts. And finally, that in Northwest versus Ginsburg, which was an ADA case, the court held that the preemption clause reached common law rules. And as the court put it, what is important is the effect of the state law regulation of the safety exception as well. And I'd like to save the last three minutes for rebuttal. Thank you. All right. Counselor, I think you're still on mute. Thank you, Your Honor. Dan Polsenberg for C.A. Robinson. Plaintiff has a very broad approach to this case. They come in here and say that Chara has said that airlines can be negligent for people tripping over luggage, and therefore all torts are not preempted. They argue that since carriers can be liable vicariously for the negligence of their drivers, such as running red lights, that therefore brokers should be liable as well, and preemption does not apply. That's not the right analysis. And I think Judge Due, Judge Due's order in the district court embodied the right analysis. What she said was, let's look at this claim and let's look where it's directed. And this claim is directed at reshaping what it is that brokers do, reshaping beyond the market forces of the marketplace to say that things should be done differently. And Judge Due correctly concluded that preemption applies because the statute we have here, and let me call it the F4A because it's just easier, that a state may not enact or enforce a related to a price, route, or service of any broker. And here we're dealing with a broker, so we have to look at what it is a broker does. And the decisions that say that preemption doesn't apply here generally do not look at the F4A statute, 49 U.S.C. 13102, which says, defines what a broker is. A broker is a person that negotiates for and is involved in arranging for transportation by motor carrier. So that is what it is that we do here. Shippers may contact us, carriers may tell us that they're available, and we put the two of them together. And we rely on the Federal Motor Carrier Safety Administration, which does the evaluation and the approval of carriers. The FMCSA registers them, approves them, authorizes them for operation. They can come in and they can withdraw that authorization. They can take away their registration. They can consider them to be unsatisfactory, and we wouldn't be able to use them. But the essence of what we do and the market forces that drive us have us look to registered motor carriers. And if we were to do it any other way, if we were to allow state law to come in here and say, well, you could have done something else or you could have looked somewhere else, we would create the exact patchwork of jurisdiction by jurisdiction standards that is exactly what the FMCSA or the F4A wanted to prevent. This case reminds me so much of Roe, the U.S. Supreme Court case, where Maine had these regulations that said if you're going to transport tobacco products, you have to do additional things. You have to have verification of the recipient. You have to make certain checks of the products and of the shipper. And the U.S. Supreme Court said that that's going far beyond what the marketplace author sets out for what a carrier would do. And so what we're doing is we're requiring carriers to do things that the market forces don't require them to do and freezing them into things that they may decide later they don't want to do. And that's what the state law would do if we applied tort law here. And Mr. Ehrlich raises the point that under Northwest versus Ginsburg, even tort claims can have the force and effect of law. Yes, that's why they're preempted here. And in fact, it would be unworkable, I would submit, because not only would this undermine, as the Supreme Court said in Ginsburg, undermine with a common law and deregulation, but it would go just even further than that and say we don't even know what the requirements are. It's not as though we have a regulation that says if you're going to So we would have different standards, not only in different states, but in different cases. We don't know what they are in advance, and that would be incredibly disruptive. I mean, also, I think that's as far as you need to go to decide this case. But in the Ninth Circuit, I think there's even more that we can argue. Yes, in Chariz, this decided to get away, Mr. Ehrlich brings up the Harris case, get away from the decisions we had before, which were somewhat unworkable. Judge O'Scanlan warned in advance that would be hard to apply. So in Chariz, this court looked at the three words together, looked at price, route, and service, read them together, perhaps under the doctrine of a use them generis, and decided to take a public utility approach and said that service isn't just any possible service. It's not serving cocktails on the airplane. It's looking at the frequency and scheduling of transportation. It's looking at the selection of markets. Carriers would be liable still for those incidental conduct that don't go to the essential service that they were providing. Now, I don't want to be made fun of by saying that I'm going back to the Fifth Circuit test that this court ruled in Chariz. It's not really operation versus maintenance. But what we are looking at is something that, in the words of the Supreme Court in Roe, it's the essential details of the carriage itself. So it isn't whether you put your turn signal on when you turn left. It's the determinations of how you're going to perform the essential carriage. That's for a carrier. The decision for a broker, I think, is much easier. A broker arranges for transportation. So if the state law is going to affect how we arrange for transportation, over and above what market forces do, then that's preemptive. Insurance, yes. I do think that the fact that the F4A provides that carriers have to have insurance in a sufficient amount to satisfy personal injury or death claims, and brokers do not, is indicative of the fact that Congress intended that carriers could be liable for this and have to make compensation. But brokers didn't. Irrespective of whether attorneys in California or Nevada have to have professional negligence. In Chariz, this court even said that under the Airline Deregulation Act, the fact that Congress set out that airlines have to have insurance for personal injuries and death is indicative of the fact that Congress considered that air carriers would have liability for ordinary run-of-the-mill claims. But this is not a run-of-the-mill claim. In fact, Judge Deuce says that exact line. It's not a run-of-the-mill claim because it is aimed exactly at the thing that we do as a broker. It doesn't apply generally. Laws of general applicability are things like the suitcase in the hallway of the airplane. This isn't general applicability. This is something specific to what it is that we do. Now, if brokers were somehow liable vicariously for what carriers did, that would maybe somehow be an argument. But nobody is contending that that's the law. In fact, what they're doing is they're suing us on an independent court for our own actions, and our actions are the things that we did when we brokered this transportation. Let me go to the Savings Clause, and I don't want to call it the safety exception because I think that slightly misconstrues what it's about. What it says is that Paragraph 1, the Preemption Clause, will not restrict the safety regulatory authority of a state with respect to motor vehicles. It goes on to say other things, too. It doesn't restrict the authority of the state to impose highway route controls for limitations based on size or weight of the motor vehicles or the hazardous nature of the cargo. And the reason I go to that extreme in talking about that is because it's clear. While it has to fall under the regulatory authority of the state, and it doesn't, and while it has to do with safety, and here I don't think you can make the argument that this has to do with safety, but it certainly isn't with respect to motor vehicles. It's here to our independent act of brokering this transportation. Let me address the two points that I skipped over briefly. The regulatory authority of a state is generally considered to be the police power, and that's expressed in regulation. I'm sorry, you got cut off for a second there, counsel. Thank you, Your Honor. The regulatory authority of a state rises out of the police power, and that is expressed in legislation and regulations, and not in tort law. While they argue that tort law has the force and effect of law, that's the reason why it's preempted, but that doesn't automatically fall under the regulatory authority of the state. This doesn't go to safety, as this court said in American Trucking Associations. If we were to say that this is something of broad applicability, then we would basically have the exception eat up the entire rule, or at least cut a wide swath through. But it also, as we point out in the last section of our brief, it also does not have to do with motor vehicles. It's an attempt through state tort law to regulate our behavior in the marketplace. And we're not responsible for the motor vehicle, and we're not responsible for the drivers. So this goes far too far. Let me end with a point that I made earlier, and that is what it is that we do. We rely on the agency. Here are the FMCSA. The FMCSA does the evaluation, the registrations, the suspensions, the emergency orders saying that carriers can no longer operate. They're the ones who look at this information. They're the ones who make that decision. We rely on that information to perform the task that we do, and that's what the market forces have us do right now. Now, perhaps sometime the market forces may change, shippers may want to separately negotiate for additional services, such as us going out and investigating the shippers. As the amici point out, we work on a tight clock and a thin margin. And what they're doing is just coming in and changing those market forces. It's not our role to second guess what it is that the federal government has done. We rely on the federal government, and that's what market forces do. And under those circumstances, we fall under the provision as a service of a broker, and state tort law can't change that. Thank you. Thank you, counsel. I'd like to begin by pointing out that the FAAA was never intended to be a tort law statute. It's a deregulatory statute, and that the words that were chosen to preempt state laws that affect or relate to rates, routes, and services were not chosen randomly. That phraseology refers to the state of the world before Congress passed these deregulatory provisions, both for the airlines and the trucking industry, when under the regulatory regime, every market that an airline could fly into or out of was dictated by the government. Every, the services that they could provide, the frequency was regulated by the government, and the prices they could charge was regulated by the government. And so the purpose of these statutes was to wipe away that kind of fiat approach to the services that would be offered to customers in the airline industry and the trucking industry and replace it by market forces. And my colleague makes a lot of discussion about the forces of competition, but there's no conflict between negligence law and liability and market competition. All of the participants in the market have to be subject to negligence law. There's nothing in conflict at all with that. In fact, the whole point of negligence law is in some ways a bit of a counterweight to some of the market competition, which held trucking companies, carriers, don't spend as much on maintenance for your trucks. Make your employees drive longer hours so you can lower your costs. But they're not allowed, tort law and the duty of care says you can compete in the marketplace, but you have to do it reasonably. So that's not an attempt by the state to return to the kind of regulation that Congress intended to wipe out with these statutes. I think the biggest problem with CH Robinson's argument is when you can see that the statute does not preempt negligence claims against carriers, the concerns about a 50 stage patchwork or impeding competition kind of fall away. Because if the carriers have to participate in the market, and if they're told that in performing their service of transporting freight, that they have to act reasonably, and that is not as deemed to relate to rates, routes, or services, why would the same preemptive standards dictate a different result with respect to brokers? And Roe is completely distinguishable because in that case, the state directly specified how the job had to be done. And that is not how the duty of care works here. It doesn't tell anyone to do anything. It just says, if you act unreasonably, you could be held to account in court. And with that, I'd submit. Thank you. Thank you very much, counsel, for your very helpful arguments today. The matter is submitted.
judges: Fernandez, Nguyen, Bolton